UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-60448-CIV-COHN/WHITE

EULIE POLANCO,

      Petitioner,

vs.

WALTER McNEIL,

      Respondent.

_____/

## ORDER ADOPTING REPORT OF UNITED STATES MAGISTRATE JUDGE

**THIS CAUSE** is before the Court on the Report of Magistrate Judge [DE 16] regarding Eulie Polanco's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus [DE 1] ("Petition"), submitted by United States Magistrate Judge Patrick A. White. Pursuant to 28 U.S.C. § 636(b)(1), the Court has conducted a *de novo* review of the record herein, including the Petition [DE 1], the Report of Magistrate Judge [DE 16], Petitioner's Objections to Report and Recommendation of Magistrate Judge [DE 19] ("Objections") and is otherwise advised in the premises.

### I. BACKGROUND

Petitioner was convicted of first-degree murder and aggravated battery following a non-jury trial in Broward County Circuit Court.[1] The crimes resulted in the death of Petitioner's two-year old daughter on March 22, 2002. Petitioner raised insanity as a

---

[1] The Report of Magistrate Judge contains a full description of the relevant factual and procedural background, see DE 16 at -12, and thus only a brief summary shall be included herein.

defense and acknowledges that "the only contested issue was the Petitioner's sanity at the time of the offense." DE 13.

At trial, evidence regarding the Petitioner's mental state was offered by close friends and co-workers of Ms. Polanco as well as other individuals, such as her divorce lawyer, a mediator and police who arrived at the scene of the crime. In addition, each side presented expert testimony. Petitioner called Dr. Amy Swan, a clinical and forensic psychologist, who testified that Ms. Polanco was legally insane at the time of the incident. Dr. Swan based her opinion on testing she conducted on the Petitioner which revealed that Polanco was "having major depressive episodes with psychotic features, and that the petitioner had some maladaptive personality traits." DE 16 at 10.

On cross-examination, "Dr. Swan admitted that someone could be floridly psychotic and sane." Id. Dr. Swan also acknowledged that Petitioner "had indicators of being prone to exaggeration," and the "ability to be coached on a test." Id. at 10-11. Dr. Swan also testified that (1) "there were some inconsistencies on the results of the test she administered," (2) Petitioner made certain disingenuous statements, and (3) Petitioner used logic and problem-solving skills when committing the crimes. See id. at 11. The Report of Magistrate Judge also states the following:

> Dr. Swan further acknowledged that the petitioner's request for
> forgiveness may indicate that she knew she had done something wrong.
> Dr. Swan also explained that someone can be psychotic and still know
> right from wrong. According to Dr. Swan, the petitioner's suicide note
> shows anger towards her husband, and demonstrates some organization.

Id. at 11.

The prosecution called Dr. Bourg-Carter, a forensic psychologist, as a rebuttal witness and expert. Dr. Bourg-Carter reviewed notes prepared by nurses while

Petitioner was incarcerated and also examined the results of a second psychological test. Dr. Bourg-Carter opined that this information cast doubts on the accuracy of the initial test results relied on by Dr. Swan. See DE 11 at 21-22. Based on his analysis, Dr. Bourg-Carter testified that the Petitioner was not psychotic. See id. at 11.

On September 25, 2003, the trial judge rejected the insanity defense and found Petitioner guilty of both charges. Id. at 2. Petitioner "was sentenced to a term of life imprisonment without parole as to Count 1, and the court withheld imposition of sentence as to Count 2." DE 16 at 4. Petitioner appealed and her convictions and sentence were affirmed in Polanco v. State, 917 So. 2d 1010 (Fla. Dist. Ct. App. 4th Dist. 2006). In particular, the Fourth District Court of Appeal wrote as follows:

> Our review of the entire record supports the trial court's finding that Mrs. Polanco was guilty of first degree murder and aggravated child abuse of her two-year old daughter and that she was sane at the time of the commission of these crimes.

Id. at 1010. Thereafter, Petitioner filed motions for post-conviction relief with the trial court, all of which were denied. Those denials were affirmed in the decision Polanco v. State, 993 So. 2d 566 (Fla. Dist. Ct. App. 4th Dist. 2008).

On March 19, 2009, Ms. Polanco signed the instant Petition which raises eleven claims. As set forth in the Report of Magistrate Judge, Petitioner's eleven claims consist of the following:

1. She was denied effective assistance of counsel, where her lawyer failed to seek disqualification of the judge during trial on the basis that the presiding judge may have been having a relationship with an attorney in the prosecutor's office.

2. She was denied effective assistance of counsel, where her lawyer failed to object to the testimony of a prosecution witness on the basis that the witness had violated the rule of sequestration.

3. She was denied effective assistance of counsel, where her lawyer failed to interview potential witnesses to support the petitioner's insanity defense.

4. She was denied effective assistance of counsel, where her lawyer misadvised her to forego a jury trial and proceed with a non-jury trial on the basis that she would be unable to obtain an unbiased jury.

5. She was denied effective assistance of counsel, where her lawyer failed to object and move to strike any notes made by Dr. Shapiro on the basis that the petitioner had not waived her right to privacy and confidentiality.

6. She was denied effective assistance of counsel, where her lawyer was operating under a potential conflict of interest.

7. The cumulative errors by counsel deprived the petitioner of a fundamentally fair trial.

8. She was denied effective assistance of counsel, where her lawyer failed to advise the court that the petitioner had stopped taking her psychotropic medication at the time she waived her right to a jury trial, thereby rendering her waiver not knowing and voluntary.

9. The trial court erred in admitting the testimony of Dr. Sheri Bourg-Carter as an expert, where there was an insufficient predicate to permit her testimony, that was based on speculation and facts not in evidence, in violation of the petitioner's constitutional rights.

10. The trial court erred in overruling the petitioner's objection to the prosecution's hypothetical question posed to Dr. Bourg-Carter regarding whether a generally depressed homicide suspect could become psychotic following a suicide attempt once the suspect regains consciousness in the hospital and learns that her child is dead.

11. The trial court erred in failing to recognize the privileged and confidential nature of the mediation proceedings.

DE 16 at 1-3 (citations omitted).  Respondent concedes that the Petition is timely and that the above claims were properly exhausted.  See id. at 5.[2]  United States Magistrate Judge White thoroughly addressed the merits of Petitioner's claims.  In a comprehensive fifty-one page report, Judge White concluded that Petitioner's claims lacked merit.  Accordingly, Judge White recommended that the Petition be denied.

On June 21, 2010, after receiving an extension, Petitioner filed her Objections to Judge White's Report.  The Objections take issue with Judge White's analysis of all eleven claims.

## II. ANALYSIS

Petitioner's Objections essentially reargue the eleven claims raised in the Petition.  As a general matter, the majority of claims raised in the Petition are based on the purported ineffectiveness of Petitioner's counsel.  To establish ineffective assistance of counsel, a petitioner must show both that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the petitioner.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  The performance element requires the Petitioner to show that her "counsel's representation fell below an objective standard of reasonableness in light of prevailing professional norms at the time the representation took place." Cummings v. Sec'y for the Dep't of Corr., 588 F.3d 1331, 1356 (11th Cir. 2009) (internal quotation omitted).  In assessing the reasonableness of counsel's performance, courts must "indulge a strong presumption that counsel's conduct falls

---

[2] Judge White found that claims nine and ten were unexhausted and thus procedurally barred.  See DE 16 at 39-42.  Nonetheless, Judge White addressed the merits of these claims.

within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Strickland, 466 U.S. at 689 (quotation marks omitted). The prejudice element requires the Petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 695.

Petitioner's claims also take issue with conclusions reached by the state trial court. Accordingly, it is important to bear in mind that "[t]he function of federal habeas corpus is to redress constitutional errors, not to relitigate state criminal cases." Mize v. Hall, 532 F.3d 1184, 1195 (11th Cir. 2008) (citing Herrera v. Collins, 506 U.S. 390, 401 (1993)). Consistent with this function, claims which have been adjudicated on the merits in state court are subject to deference. Specifically, 28 U.S.C. § 2254 provides as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Therefore, this Court's review of Petitioner's state court convictions and sentence "is greatly circumscribed and is highly deferential to the state courts." Crawford v. Head, 311 F.3d 1288, 1295 (11th Cir. 2002). In light of these

standards, the Court has carefully considered Petitioner's Objections and, for the reasons discussed below, agrees with Judge White that the claims lack merit and the Petition must be denied.

Claim One: Petitioner argues that she was denied effective assistance of counsel because her attorney failed to seek disqualification of the trial judge. Specifically, Petitioner argues that she had a well-founded fear that she would not receive a fair trial based on the following:

> [T]he judge (1) being involved in a martial separation from his wife; (2) being visibly, emotionally distraught; (3) being romantically involved with a state attorney from the office who was actively prosecuting Defendant; (4) having daily side-bars with state attorney inside the courtroom; (5) being seen accompanying aforesaid state attorney during court breaks and recesses and (6) allowing the aforesaid state attorney to indeed appear on the record for the State in the pending appeal.

DE 19 at 2-3. At the outset, the Court notes that the Objections devote considerable attention to this claim as compared to the remaining ten. Accordingly, this Court will follow suit.

Petitioner's disqualification argument was also raised in her motions for post-conviction relief and was rejected by the trial court and the Court of Appeal. See Polanco, 993 So. 2d at 566-67. Likewise, Judge White found that Petitioner failed to establish an objective fear that she would not receive a fair trial and also failed to demonstrate any prejudice arising from counsel's failure to pursue this claim. See DE 16 at 17-20.

The Objections acknowledge that the Report of Magistrate Judge "adequately states the applicable law on this issue" but disagree with Judge White's conclusion. The Objections raise several facts which Petitioner argues require a different result. As

7

discussed below, the Court concludes that these facts do not establish a valid claim for ineffective assistance of counsel.

First, the Court concludes that there is no merit to Petitioner's claim that disqualification was warranted because the trial judge was distraught over an on-going separation from his wife. The Objections spend little time on this argument and Petitioner fails to articulate how these facts could result in an unfair trial.

Second, the Petitioner cannot establish that her counsel could have filed a successful motion for disqualification and, therefore, she cannot show prejudice. The Objections state as follows:

> The courts in their prior ruling characterized the judge's relation with the prosecutor as a 'possible affair' which was based on 'rumor and courthouse gossip.' The Magistrate also relies on this characterization in his Report that is subject to review by this Court. However, the prior decisions failed to acknowledge the existence of the Second Affidavit of Alfreda Coward (Exhibit RR 1) where trial counsel stated that she had first-hand knowledge regarding the allegations in the motion to disqualify.

DE 19 at 4. The Objections, however, overstate the import of the exhibit. Significantly, the Second Affidavit of Alfreda D. Coward contains no first-hand knowledge that the trial judge and the state attorney were involved in a relationship at the time of the trial. Instead, Ms. Coward states that "[i]t was _believed_ by division attorney, including myself, and courtroom staff that the trial judge was engaged in an intimate relationship with said prosecutor during the trial based on their conduct in court." Ex. RR1 ¶ 13. A rumor is not transformed into a fact simply because certain people believe it.

Moreover, the Court finds nothing remarkable about the "conduct in court" upon which Ms. Coward came to believe that an "intimate relationship" existed. Ms. Coward declares that she "was present when said prosecutor frequently visited the courtroom

and sometimes had sidebar conversations with the trial judge." Id. ¶ 11. Conversations between trial judges and the prosecutors and defenders who appear before them regularly is not uncommon and does not provide any basis for a motion to disqualify. Ms. Coward also describes an isolated incident when she "observed the trial judge and said prosecutor come around the corner together while at the elevator but opt not to get on the elevator with others." Id. ¶ 9. Further, without providing any specifics, Ms. Coward declares that she observed said prosecutor "in the courtroom during much of the trial." Id. ¶ 8. Viewing these facts in their totality, the Court finds that they do not substantiate that a romantic relationship existed at the time of Petitioner's trial, nor do they rise to the level that would sustain a motion to disqualify the trial judge.

Ms. Coward's affidavit states that "[i]t should be noted that now [the trial judge and said prosecutor] have a very public relationship in that they make public appearances and currently reside together." Id. ¶ 13. The Court concludes that this information does not establish that a relationship existed at the time of Petitioner's trial. More to the point, such information was not available to Petitioner's trial counsel and thus could not have formed the basis of a motion to disqualify.

Finally, the state attorney in question, Guiseppina Miranda, did not prosecute Petitioner's case. Rather Ms. Miranda worked in the prosecutor's office, along with a number of attorneys, including Howard Sheinburg, the trial attorney responsible for Petitioner's case. The Objections claim that Exhibit RR2 refutes this fact. Again Petitioner overstates the significance of the exhibit. Exhibit RR2 is a two-page transcript of a brief pre-trial hearing regarding a subpoena duces tecum. The exhibit makes clear that Ms. Miranda was "standing in" for Mr. Sheinburg. Ms. Miranda's

interaction with the trial judge consists of a few lines in which she states that she will pass along information to Mr. Sheinburg. Ms. Miranda's limited pre-trial appearance does not support a conclusion that she was one of the trial attorneys responsible for prosecuting the Petitioner.[3] Accordingly, the Court concludes the Petitioner's trial counsel was not defective for failing to move to disqualify the judge. In addition, Petitioner fails to show prejudice because any such motion likely would of been denied.

Claim Two: Petitioner argues her counsel was ineffective for failing to timely object to the rebuttal witness, Dr. Bourg-Carter, in violation of the rule of sequestration. The Court agrees with Judge White that this claim must fail because the record does not support Petitioner's "allegation that Dr. Bourg-Carter's testimony was improperly colored by the prior testimony of Dr. Swan, the defense's expert." DE 16 at 23 n.12. The Objections also fail to articulate how Dr. Bourg-Carter's testimony was improperly influenced.

Instead, the Objections take the position that a timely objection would have resulted in the exclusion of Dr. Bourg-Carter, who "was the only witness called by the state to attack the reliability of Dr. Swan's medical conclusions." DE 19 at 8. Therefore, "the record would have been uncontroverted, by the experts involved, as to the Petitioner's defense of insanity." Id. The foregoing stands in contradiction to

---

[3] In any event, courts have found that a prosecuting attorney, acting in his or her official capacity, does not have "an interest that could be substantially affected by the outcome of the proceeding[s]." Davis v. State, 554 So. 2d 1094, 1098-99 (Ala. Crim. App. 1984) ((alteration in original) (quotation marks omitted). A prosecutor's "fee or salary [is] not dependent upon the result of [a] litigation" and, therefore, there is no interest beyond "pride in the successful outcome of the proceedings." Id. at 1099 (quotation marks omitted).

Petitioner's argument that Dr. Bourg-Carter would not qualify as an "essential witness" and warrant an exception to the sequestration rule. Accordingly, Petitioner cannot show that a timely objection would have resulted in a different conclusion than when this issue was raised her motion for postconviction relief. That motion was denied by the trial court and the denial was summarily affirmed. See Polanco, 993 So. 2d 566.

Claim Three: Petitioner asserts that she was denied effective assistance of counsel because her lawyer failed to interview and call two potential witnesses. The Court agrees with Judge White that the testimony of these witnesses "would have been cumulative to evidence already presented either through direct examination of cross-examination." DE 16 at 25. Accordingly, this claim cannot support a finding that Petitioner's counsel was ineffective. See, e.g., Van Poyck v. Fla. Dep't of Corr., 290 F.3d 1318, 1324 n.7 (11th Cir. 2002) ("A petitioner cannot establish ineffective assistance by identifying additional evidence that could have been presented when that evidence is merely cumulative.").[4]

Claim Four: Petitioner claims that counsel was ineffective for advising Petitioner to opt for a non-jury trial. As explained by Judge White, the decision to have a non-jury trial was the subject of a written waiver and a thorough colloquy. See DE 16 at 28. Further, in evaluating a counsel's performance, the Eleventh Circuit has articulated the standard as follows:

---

[4] Moreover, this claim is subject to summary dismissal because the Objections merely assert what the witnesses would have testified to as opposed to attaching affidavits. See DE 16 at 24.

11

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight.

White v. Singletary, 972 F.2d 1218, 1220 (11th Cir. 1992) (citing Strickland v. Washington, 466 U.S. 668, 689 (1984)). Moreover, "'[s]trategic choices made after thorough investigation of law and facts relevant to possible options are virtually unchallengeable.'" Pace v. McNeil, 556 F.3d 1211, 1223 (11th Cir. 2009) (quoting Stickland, 466 U.S. at 694)). Therefore, claim four lacks merit.

Claim Five: Petitioner asserts that her counsel was ineffective for failing to object to notes made by Dr. David Shapiro. Petitioner argues that the notes were subject to the psychotherapist-patient privilege. Florida law expressly provides that this privilege does not apply to "communications relevant to an issue of the mental or emotional condition of the patient in any proceeding in which the patient relies upon the condition as an element of his or her claim or defense or, after the patient's death, in any proceeding in which any party relies upon the condition as an element of the party's claim or defense." Fla. Stat. § 90.503(4)(c). Accordingly, claim five fails.

Claim Six: Petitioner argues that she was denied effective assistance of counsel because her lawyer was operating under a potential conflict. Specifically, Petitioner argues that her lawyer had a potential conflict with Dr. Shapiro, who was initially listed as a possible defense witness. To establish an ineffective assistance of counsel claim, a defendant must show an actual conflict which adversely affected her counsel's representation. See LoConte v. Dugger, 847 F.2d 745, 754 (11th Cir. 1988). As

12

discussed by Judge White, Petitioner fails to show either element and thus claim six lacks merit. See DE 16 at 34-36.

Claim Seven: Petitioner claims that she was denied a fair trial and effective assistance of counsel in light of the cumulative errors of her attorney. As discussed herein, the Court finds that Petitioner's claims for ineffective assistance of counsel fail individually. In addition, viewing all Petitioner's claims in their totality, the Court concludes that her counsel's performance did not fall below constitutional standards.

Claim Eight: Petitioner asserts that her counsel was ineffective for failing to inform the trial court that Petitioner was no longer taking psychotropic medications. The Court agrees with Judge White's description of the record which demonstrates that Petitioner was able to coherently participate in the proceedings. See DE 16 at 38. This view was also shared by the trial and appellate courts when the same issue was presented in a motion for postconviction relief. See id. at 39. Accordingly, claim eight fails.

Claim Nine: Petitioner argues that she was denied her constitutional right to a fair and impartial trial "when the trial court admitted the expert testimony of Dr. Bourg-Carter without sufficient predicate and based solely on speculation and facts not in evidence." DE 19 at 12. The Court agrees with Judge White's thorough analysis of this claim and his conclusion that it does not provide grounds for habeas relief. See DE 16 at 42-47. Petitioner's Objections fail to undermine either Judge White's analysis or his conclusion.

Claim Ten: Petitioner claims that the trial court erred by allowing the state's expert, Dr. Bourg-Carter, to answer hypothetical questions using facts not in evidence.

Specifically, Petitioner asserts that the trial court erred in overruling Petitioner's objection to the prosecution's question regarding whether a generally depressed homicide suspect could become psychotic after a suicide attempt after regaining consciousness in the hospital and learning that her daughter was deceased. As discussed by Judge White, claim ten is a reiteration of the arguments raised in claim nine. As such, claim ten also fails for the same reasons. See DE 16 at 47.

Claim Eleven: Petitioner asserts that the trial court erred by allowing the testimony of the a family law mediator and attorney. Petitioner argues that such testimony was privileged and confidential and, therefore, inadmissible. The Report of Magistrate Judge points out that the mediator and attorney both testified regarding their observations of Petitioner's behavior and mental state rather than privileged communications. Id. at 48. Moreover, assuming either witness offered testimony regarding privileged communications, there is a presumption that the court, as trier of fact in a non-jury trial, disregarded such evidence. Petitioner fails to rebut that presumption and, therefore, claim eleven lacks merit.

### III. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1. The Report of United States Magistrate Judge Patrick A. White [DE 16] is **ADOPTED**.

2. Ms. Polanco's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus [DE 1] is **DENIED with prejudice**.

3. All pending motions are **DENIED as moot**. The Clerk of Court is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 30TH day of July, 2010.

/s/ James I. Cohn
JAMES I. COHN
United States District Judge

Copies provided to:

Counsel of record via CM/ECF